IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| MIGUEL ANGEL RIVERA ROSARIO | * | |
| | * | CIVIL NO. _____ |
| Plaintiff | * | |
| vs. | * | |
| LSREF2 ISLAND HOLDINGS, LTD.INC.; | * | |
| HIBISCUSPR 73 LLC; INSURANCE | * | TORTS UNDER ARTICLE 1802 |
| COMPANY X and Y | * | PUERTO RICO CIVIL CODE |
| | * | AND DEMAND FOR JURY TRIAL |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE   HONORABLE    COURT:

COMES  NOW plaintiff Miguel Angel Rivera Rosario  through the undersigned counsel  and very respectfully states, alleges and prays:

NATURE OF THE ACTION

1.This is an action whereby compensation is requested for  damages suffered as a result of a malicious prosecution claim against defendants  based on  Puerto Rico's  negligence  statute, Article 1802 of the Puerto Rico Civil Code,  (In addition, there also existed  at the same time  a fraudulent  and intentional  representation ("Common Law Fraud") by  defendant  Island Holdings  of material facts with the intention of causing harm to plaintiff . ("Bad Faith")

1

2. The damages suffered in this case, and the cause of the malicious prosecution claim, arise and are related to the judicial case <u>LSREF2 Island Holdings, Ltd, Inc. v. Miguel Rivera Rosario, Angel Rivera Meléndez, et als.,</u> Civil No. FCC12010-0449 (0004), Court of First Instance, Superior Part of Loiza in Carolina, regarding Foreclosure of Pledge and Mortgage.

## JURISDICTION

. 3. The present case is in accordance with 28 U.S. C. Sec. 1332 (a) (2), (c) (1) (diversity jurisdiction). To that effect, defendant LSREF2 Island Holdings, Ltd, Inc. (LSREF2) is incorporated in the foreign state of Bermuda; HIBISCUSPR 73 LLC (Hibiscus) exists under the laws of the State of Delaware, U.S.A., not being any of its members a resident of Puerto Rico, being plaintiff a citizen of Puerto Rico.

<u>PARTIES</u>

4.. Plaintiff Miguel Rivera Rosario is of legal age, a businessman, and resident of San Juan, Puerto Rico.

5. Defendant LSREF2 is a company incorporated in Bermuda with authorization to do business in Puerto Rico, with offices in San Juan, Puerto Rico.

6. Defendant Hibiscus is a company of limited responsibility existing under the laws of the State of Delaware, U.S.A, with offices in San Juan, Puerto Rico, not being registered with the Puerto Rico State Department.

7.Both defendants LSREF2 and Hibiscus are  "Professional Buyers of Lawsuits", To that effect, both are dedicated to buying accounts,  which are considered losses by the financial and banking institutions, at extremely low prices, below the market  prices, to then proceed to collect them,  "having said type of buyers the fame of harassing and relentlessly persecuting debtors for the purpose of making large profits ". (J. Trias Monge, "El Envejecimiento de los Códigos,  pages 449, 450). (See Mortgage Capital,Inc. V.David Santiago Martinez et al. , (2019 TSPR 129)

8.Co-defendant Insurance Company X and Y are insurance companies which at all times relevant to this case were Defendants  LSREF2 and Hibiscus' insurers and thus had insurance policies which covered the damages requested in this complaint. At the moment of filing of this  complaint the name  and address of said companies are unknown to plaintiffs.

## FACTUAL ALLEGATIONS

9.Plaintiff Miguel Rivera is the owner  of  the property  located in the  Torrecilla Alta  de  Loiza neighborhood,  in the area known as Piñones, with an area, per the current Registry of Property description, of 1,381  square meters. of Carolina.

10.In  said  property  there  is  a  cement  structure  of  two  stories,  which  is completely leased by plaintiff to a Head Start federal program.

11.On  July 8, 2010, the First Bank of Puerto Rico (First Bank) filed  the case, referred in the previous paragraph 2 of this complaint,  of First Bank of Puerto Rico v. Miguel Angel  Rivera Rosario,, et. al,  concerning plaintiff Miguel Rivera's property

referred in the preceding paragraphs 9 and 10. FirstBank intended to collect various mortgage notes subscribed by plaintiff Miguel Rivera Rosario and guaranteed with a mortgage over said plaintiff's referred property located in the Torrecilla Alta de Loiza.

12. On June 24, 2011, the parties back then filed in said judicial case a settlement agreement, titled "Joint Motion Requesting Entry of Judgment", which was approved by the Superior Court and Judgment was entered pursuant to such agreement on August 1, 2011, indicating the same was *res judicata*.

13. On said judicial settlement agreement, in consideration of the defendants' (including here plaintiff) acceptance and acknowledgement of owing Firstbank the principal amount of $2,939,499.12, plus interest and various charges, and consent to the judgment, Firstbank granted the same the period of twelve (12) months to sell the mortgaged property for a sum of no less than 1.5 million dollars, sum that if obtained would be paid to Firstbank for the totality of the debt. During that period defendants (including here plaintiff) had to pay twelve (12) monthly payments to FirstBank for the sum of $5,300.00 each payment, amount that would be jointly applied to the late charges, interest and indebted principal detailed in the referred agreement.

14. As part of said settlement agreement, if defendants (including here plaintiff) complied with the monthly payments referred in the preceding paragraph, but were not able to sell the property during the term stated therein, First Bank would grant them a second term of twelve (12) additional months for defendants to sell the

4

property for the stated sum. During that additional period, defendants would make another twelve (12) monthly payments to FirstBank, in this case each payment for the sum of $6,300.00, amounts that would also be jointly applied to the late charges, interest and indebted principal.

15. Pursuant to such judicial settlement agreement and the Judgment accordingly entered, on September 19, 2011, and in accordance to item 5(p) of said settlement agreement, plaintiff Miguel Rivera solicited from FirstBank, in a letter, permission to segregate and sell for the price of $150,000.00, a portion of land of 626.7606 square meters of the mortgaged property. At that portion of land was located the business known as "Blue Iguana", administered by Mr. Nahum Gómez Hidalgo, the person interested in acquiring the property, which sold to the public food typical to the Piñones area.

16. On October 20, 2011, FirstBank, through its legal counsel, notified a communication to here plaintiff''s counsel, where Firstbank agreed and authorized the referred sale to Mr. Nahúm Gómez, with the condition that the sales price of $150,000.00 be paid to Firstbank, Said sum would then be applied exclusively, as a result of the request of here appearing plaintiff Miguel Rivera, to the monthly payments in favor of Firstbank referred in the preceding paragraphs 13 and 14 of this complaint. Said communication also provided a period of ninety (90) days to fulfill the acts there prescribed,

17. On October 24, 2011, Mr. Gómez and plaintiff Miguel Rivera, subscribed a Purchase Option Agreement, in relation to the referred sale, paying Mr. Gomez

the sum of $7,500.00 for the option, sum that was paid to Firstbank.    Mr. Gómez paid the rest of the sales price through monthly payments.   The procedure for payment   was that Mr. Gomez handed   the monthly payments to plaintiff Miguel Rivera, who then,   usually through defendant guarantor,  Angel Rivera Meléndez, paid  the same to Firstbank through a specially designated official of the bank, Mr.

George Pappas.  Said monthly payments  commenced on March 1,  2012 and ended on August, 2013.  Firstbank was fully conscious and aware, and totally accepted, that the referred monthly payments came  from the payments made by Mr. Gómez as part of the sales price for the Blue Iguana property.

18.Mr. Pappas, on behalf of FirstBank, received the $7,500.00 paid by Mr. Gómez corresponding to the  option to purchase the Blue Iguana property, and subsequently  accepted all the remaining monthly payments,  made by Mr. Gómez through plaintiff Miguel Rivera Rosario and defendant guarantor Angel Rivera Meléndez,  for approximately one year and ten months,  until the total amount of the sale was completed and approximately two years after the October 11, 2011 letter of authorization.  Firstbank was always aware of the origin of the money, that it came from Mr. Gómez as payment for the referred sale.

19.To this end, Firstbank unequivocally implicitly waived some  of the original terms and conditions of the agreement. To that effect Firstbank received payments for the entire sale in a time period that far exceeded the referred period of ninety (90) days to fulfill the acts included in the agreement, without raising any objections or claiming compliance with any clause of the agreement. Thus, Firstbank made a

modifying novation of the agreement. (See P.D.C.M. Assoc. v. Najul Bez, 174 DPR7

16 (2008) (Our emphasis)

    20.This modifying novation of the agreement as here alleged, was an

argument, among others, presented to the Court by this appearing party, that was

granted, accepted and adopted by the Puerto Rico Supreme Court. This means that

this appearing party, together with Nahum Gomez, was one of the " prevailing

parties" in the Puerto Rico Supreme Court appeal and its judgment, for purposes of

the malicious prosecution claim.

    21.In consequence, the obligations included in the agreement (as indicated

by the Puerto Rico Supreme Court) remained to be complied with, but not tied to

the referred period of ninety (90) days provided in the authorization letter of October

20, 2011.

    22.On February 13, 2012, and as a result of said agreement and

authorization by Firstbank, plaintiff Miguel Rivera Rosario- with the referred monthly

payments commencing on March 1, 2012- sold to Mr. Nahum Gómez, with

Firstbank's knowledge and acceptance, the property where the business Blue

Iguana was located paying to FirstBank, in monthly payments, the total sum of

$150,000.00, product of such sale, applying such payments to the monthly

payments referred in preceding paragraphs of this complaint.

    23.When Firstbank received the totality of $150,000.00, paid by Mr. Nahúm

Gomez Hidalgo, through the referred monthly payments, as the sales price for the

property where the business Blue Iguana was located, Firstbank was obligated to

release said portion of land sold to Mr. Gómez Hidalgo and occupied by the

business called Blue Iguana within the mortgaged property. (See <u>Puerto Rico Civil</u>
<u>Code, Article 1044, 31 L.P.R.A. sec. 2994</u>)

24.On  March  28,  2013- while the referred monthly payments of the sales
price for the property where the business Blue Iguana was located were still being
made in favor of Firstbank-  here defendant LSREF2, in its role as "Professional
Buyer of Lawsuits"   acquired from FirstBank the credits and mortgage guarantees
included in the foreclosure case, referred  in the preceding paragraph 11,  at
extremely low  prices, below the market prices,  and considered as losses by  such
bank,   to then proceed with   their collection. To that effect, defendant LSREF2
formally substituted FirstBank as plaintiff in said case of foreclosure.

25.The here defendant LSREF2  upon acquiring from FirstBank the  credits
and  mortgage guarantees  and substituting FirstBank in the referred judicial case of
foreclosure,   acquired full knowledge that   plaintiff Miguel Rivera Rosario, with
FirstBank's approval, had sold to Mr. Nahum    Gomez  Hidalgo the piece of land
referred  in the preceding paragraph 17, for the sum of $150,000.00,  that the sales
price of $150,000.00  had been paid  to Firstbank through the referred monthly
payments, which ended on August, 2013, and that Firstbank had waived the
compliance of the period of ninety (90) days provided in the authorization letter to
fulfill the acts there prescribed, modifying the agreement and authorization letter.
Plaintiff Miguel Rivera Rosario also  informed defendant LSREF2  of said sale and
provided said defendant  with copy of the agreements and cancelled checks related
to the  sale.

26.When    FirstBank sold to LSREF2 the mortgage  over the property of Miguel Rivera Rosario pursuant to item 5(z) of the settlement agreement and judgment, LSRF2 became  obliged to comply  with FirstBank's obligation to allow the segregation of the property that Blue Iguana  occupied  and allow the release of such land from the existent mortgage between here plaintiff  Miguel Rivera and FirstBank (now  LSRF2). (See IBEC v. Banco Comercial, 117 D.P.R. 371 (1986)

27.However, on  December 19, 2013, defendant LSREF2 proceeded to file in the foreclosure case,    and in which the same substituted Firstbank as plaintiff, a "Petition for Execution of Judgment", soliciting the sale in public auction of plaintiff' Miguel Rivera's mortgaged property, but, true to its fame,  with malice and without probable cause-  as part of a plan with the purpose of obtaining  the most profit possible and in the most rapid manner, not having to spend time with segregation proceedings-  proceeded to improperly include in the execution  the piece of land that plaintiff Miguel Rivera sold  to  Mr. Nahum  Gomez Hidalgo. )  (Said execution, at said moment,  for certain reasons,  did not proceed, )

28.Then,  defendant LSREF2  on  March 5, 2015,  proceeded to file in the referred foreclosure case a   "Petition for New Order and Writ of Execution of Judgment", soliciting again the sale in public auction of plaintiff's mortgaged property- auction that was indeed scheduled- where, maliciously and without probable cause, included  again the piece of land that plaintiff sold  to  Mr. Nahum  Gomez Hidalgo, being  disregarded again  the sale made to the same of said piece of land.

29.On September 10, 2015 plaintiff Miguel Rivera filed a Bankruptcy Petition at the Federal Bankruptcy Court, wherein  the only creditor was defendant LSREF2. On January 14, 2016 Plaintiff Miguel Rivera   Rosario voluntarily dismissed said bankruptcy case.

30.Subsequently,  on February 9, 2016 defendant LSREF2,  proceeded to file in the referred foreclosure case  a  "Petition for Reopening of Proceedings and For New Order and Writ of  Execution of Judgment", soliciting again the sale in public auction of plaintiff's mortgaged property, where,   maliciously and without probable cause, <u>again included  the piece of land that plaintiff sold  to  Mr. Nahum  Gomez Hidalgo.</u>

31.On February 16, 2016 here plaintiff Miguel Rivera filed a motion in the referred foreclosure case opposing the execution of judgment solicited by defendant LSREF2, requesting that  Mr. Nahum Gómez be included in the foreclosure proceedings,  alleging that Mr. Gómez  was the owner of a piece of land in the property that here defendant LSREF2 was trying to execute and sell in public auction.

32.LSREF2's plan,  that  improperly included  in the execution of judgment the piece of land sold to Mr. Nahum Gómez- for the purpose of obtaining  the most profit possible and in the most rapid manner- also included, maliciously and without probable cause,  the practice of  LSREF2's   opposing all  of  Mr. Gomez's petitions for intervention  in the foreclosure case and, to,  thus,   facilitate the inclusion of the land sold to Mr. Gómez .in the execution of judgment.

33. To that effect, on March 1, 2016 defendant LSREF2,  maliciously and without probable cause, filed a Reply in opposition to plaintiff Miguel Rivera's referred motion  requesting that Mr. Nahum Gómez be included in the foreclosure case.

34. On August 22, 2016 Mr. Nahum Gomez filed a motion in the foreclosure case soliciting permission to intervene in the case, alleging that the same was the owner of a piece of land in the property that defendant was trying to execute and sell in public auction.

35. Defendant LSREF2  on September 6, 2016,  maliciously and without probable cause, again  opposed said motion filed by Mr. Nahum Gómez  to intervene in the foreclosure case.

36. At a hearing held on September 8, 2016 at the Puerto Rico Superior  Court on the foreclosure case,  defendant LSREF2,  maliciously and without probable cause, continued to oppose Plaintiff Miquel Rivera Rosario and Mr. Nahum Gomez's petitions to be included in the foreclosure case.

37. At the  evidentiary  hearings held on November 15,  2016 and December 22, 2016  at the Puerto Rico Superior  Court in relation to Plaintiff Miquel Rivera Rosario and Mr. Nahum Gomez's  petitions to be included in the foreclosure case, defendant LSREF2, maliciously and without probable cause, again  continued to oppose said petitions.

38. Said defendant LSREF2 perfectly knew from Mr. Gomez and plaintiff's motions that Mr. Gomez's interest in participating in the foreclosure case, irrespectively  if it was through the proceeding  of "indispensable party" or

11

"intervention",  was to assert his  right on part of the property under execution and the grounds supporting its contention,  namely, the sale in his favor of that piece of land, thus seeking recognition of his right over the referred piece  of land sold to him.

39.Considering that  Firstbank  had  waived  the  compliance  of  the  referred period of ninety (90) days provided in the authorization letter  to fulfill the acts there prescribed, **being LSREF2 fully aware of said waiver**, the validity of the sale in favor of Mr. Gómez of the Blue Iguana property subsisted,  and,  therefore,  LSREF2 was not in a position to refuse Mr. Gómez's rights over the Blue Iguana property, and could not oppose said petitions for intervention, irrespectively if they were through the proceedings of "indispensable party" or "intervention", in this way also preserving Mr. Gomez's  "right to be heard" as part of his right to  due process of law.

40.To that effect, on February 6, 2017   the Puerto Rico Superior Court that was handling  the foreclosure case,   <u>LSREF2 v. Miguel Rivera Rosario, et. als</u>,, Civil No. FCC12010-0449,  entered a Resolution, in favor of Mr. Gomez and plaintiff Miguel Rivera,   indicating,  in synthesis, among other things,   the following:

> a)      That Mr. Nahúm Gómez had the right to intervene in the foreclosure  case;

> b)      That Mr. Nahúm Gómez had the right to claim from defendant LSRF2  Island Holdings the liberation of the property called Blue Iguana and the segregation of the related land;

> c)      That defendant LSRF2  Island Holdings never had reason nor foundation to oppose said petition and acted with total temerity when obliging the **<u>parties</u>** and the court to have to invest money, time and resources to establish said facts; (Our emphasis)

> d)That in consequence, defendant  LSRF2  Island Holdings is ordered to  liberate from plaintiff Miguel Rivera's  mortgage the property called Blue Iguana and that the same permit the segregation of the corresponding

land;

d)      That for his temerity in the foreclosure case  it is imposed upon defendant LSRF2  Island Holdings the sum of $5,000.00 as attorneys fees and expenses caused to Mr. Nahum Gomez Hidalgo.

41.The defendant LSREF2 appealed said Resolution to the Puerto Rico Appeals Court, which on February 28, 2018 entered  judgment and revoked the same.

42.  However, Mr. Nahum Gomez and plaintiff Miguel Rivera   filed each a petition for certiorari in relation to the  Appeals Court decision, in different cases that were consolidated, to the Puerto Rico Supreme Court, which on May 25, 2018 issued the certiorari and on December 4, 2019   entered Judgment, which is firm and final, in the cases of LSREF2 v. Miguel Rivera Rosario, et. als, v. Nahum Gómez Hidalgo, CC2018-353 consolidated with  CC2018-374,  resolving, -among other matters--  the case in favor of Mr. Gómez and Plaintiff Miguel Rivera, being both prevailing parties-especially in the case of Mr. Rivera, accepting  Rivera's  arguments in relation to Mr. Gomez and adopting and utilizing Rivera's  argument that   Firstbank had waived the compliance of the referred  period of ninety (90) days provided in the authorization letter  to fulfill the acts there prescribed:[1], also indicating the following:

a)  Mr. Gómez Hidalgo has the right to intervene in the foreclosure process here in dispute;

b)LSREF occupies the same position as Firstbank in relation to mortgage debtors. So LSREF2 is placed in the same Position as FirstBank, with the same rights, but also with the same duties and obligations;

c)The segregation and release of the property where the Blue Iguana is

located, in accordance with the applicable permission requirements, subsists; LSREF2 can not deny   Mr. Gomez Hidalgo's right over the Blue Iguana;

(d) On the basis of the foregoing, it is agreed with the primary forum that LSREF2 did not have a valid basis for opposing Mr. Gomez Hidalgo's request for intervention and that his conduct was reckless in forcing Gomez  to invest time, money and resources to assert his right.

(The preceding  subject-matters, sub-paragraphs  (a) to (d), included,  are *res judicata*, or, at its very least, a collateral estoppel for reason of judgment See also  Plaintiff's Discussion of Second  Error by the Appeals Court included in Plaintiff's Appeal Brief  filed in the Supreme Court.)  (Presidential Financial Corp. of Florida v. Transcaribe Freight Corp. 2012 TSPR  122)

e) The Supreme Court  therefore confirms the $5,000.00 concession granted by the Court of First Instance to Mr. Gomez Hidalgo as fees and expenses in the case.

(f) The Judgment  issued by the Court of Appeals on 28 September 2019 is revoked on the grounds set out above and the case is returned to the Court of First instance for continuation of proceedings  as resolved here.

43.. This determination of the Puerto Rico Supreme Court-  of lack of valid basis by LSREF2  to oppose Mr. Gómez's  request for intervention  and in forcing Gómez  to invest time, money and resources to assert his right- also applies to plaintiff Miguel Rivera.  (In this respect the Resolution of the Superior Court mentions "obliging the "parties" and the court to have to invest money, time and resources to establish said facts.)

44.This determination  of the  Puerto Rico  Supreme Court, referred in the preceding paragraph-, which  is *res judicata,* or, at its very least, a collateral estoppel for  reason  of judgment-  sustains   and  proves, as  a  matter  of  evidence,   that LSREF2's  conduct- including in the motions for execution of judgment  the  piece of land  that  plaintiff Miguel Rivera sold   to   Mr.  Nahum   Gomez Hidalgo,  and  the

opposition to Mr. Gomez's intervention in the foreclosure- were  malicious and underline, without probable cause,  forcing  plaintiff Miguel Rivera, as seller, to also  invest considerable time, money and resources to assert the validity of the purchase agreement here in controversy.

45. On March 6, 2020, and notified on March 19, 2020,  the Supreme Court entered a Resolution denying LSREF2's second motion for reconsideration in relation to the Judgment  referred in the preceding paragraph 42, and on March 11, 2020 the corresponding Mandate was issued and sent by the  Puerto Rico Supreme Court to the corresponding Superior Court.

46. A malicious  prosecution claim  under Puerto Rico law has four elements:

(1) the defendant instituted a criminal [or civil] action against the plaintiff; (2) the action was terminated in favor of the plaintiff; (3) the defendant acted with malice and without probable cause; and (4) the plaintiff suffered  damages." GonzalezRucci v. U.S. I.N.S., 539 F.3d 66, 69 (1st Cir. 2008) (citation omitted). See also MVM Inc. v. Rodriguez, 568 F.Supp.2d 158, 179 (D.P.R. July 28, 2008) Civil No.  17-1918 (ADC)  (These four elements for a malicious prosecution claim exist in the present  case.)

47. The Puerto Rico Civil Code provides that he who by action or omission causes injury to another person, intervening fault or negligence, is obliged to repair the injury caused. (Article 1802 Civil Code,  31 L.P.R.A. sec 5141)

48. Defendant LSREF2,   as described in this complaint, true to its fame, harassed and persecuted  Rivera **, for almost seven (7 years,**  with  malice and without probable cause,  causing all this time to  Plaintiff Miguel Rivera, as owner and then seller of the property in controversy,   damages  and severe suffering and

mental anguish, when said defendant included  in the execution of judgment  the piece of land that plaintiff sold  to  Mr. Nahum  Gomez, being  disregarded  the sale made to the same of said piece of land.

49. Also, Defendant LSREF2,  as described in this complaint, acted with malice and  without probable cause,  causing Plaintiff Miguel Rivera, as owner and then seller of the property in controversy,  additional  damages  and severe suffering and mental anguish, when said defendant  opposed Mr. Gomez's  request for intervention without a having valid basis for said opposition, forcing the parties  to invest time money and resources to assert Mr. Gomez's  right.

50. To that effect, LSREF2, according to Article 1802 of the Puerto Rico Civil Code, is responsible for the damages  suffered by plaintiff Miguel Rivera,  as a direct result of said defendant's malicious and without probable cause  actions against the same.

51. Plaintiff Miguel Rivera was also  constantly preoccupied and fearful of losing his only income and his property as he could not  obtain a refinancing  to pay off the mortgage debt since while the controversy related to the referenced sale in favor of  Mr. Nahum Gómez and the  corresponding  segregation existed,  the banks refused to give any refinancing.

52. In addition Plaintiff Miguel Rivera, as a result of the motion for execution of judgment filed on  March 5, 2012  by defendant LSREF2, which included  in the same the piece of land that plaintiff sold  to  Mr. Nahum  Gomez,  was forced to file  a

bankruptcy proceeding,  aggravating Mr. Rivera's mental anguish,  diminishing even more his opportunities to obtain a refinancing to pay the mortgage debt.

53.Also, here  appearing plaintiff feared that while there was a controversy regarding the referenced sale and segregation, they would be subject to a claim on the part of the third party, Mr. Nahum Gomez-  claim which indeed took place-to whom Plaintiff Miguel Rivera  sold the piece of land in controversy.

53.Plaintiff Miguel Rivera  has suffered emotional damages,  grave depression and  mistrust,  stress,  anxiety,  inconveniences,  damages  to his   reputation, humiliation  and  has  suffered  lack of sleep all  due  to the aforementioned malicious, without probable cause,  actions  of defendant. LSREF2.

54.. .As a direct and immediate result of the malicious, without probable cause actions  of defendant. here referred to, the interest of plaintiff Miguel Rivera in his work  and  prosperity  has  been  affected,  preventing  him  to  be  economically rehabilitated. Defendant's  actions  have  affected the search  for happiness  of plaintiff.

55.Defendants  knew   or reasonably  should have known   or foreseen that its malicious and without probable cause  actions   would cause damages  to plaintiff which are figured in the sum of $5,500,000.00 for Miguel Rivera Rosario,

56. While the appeal to the Puerto Rico Supreme Court, referred in paragraph 43 of this  complaint, was pending,  on October 23, 2018 LSREF2 transferred to Hibiscus, according to information provided by the same,  the credits and mortgage

guarantees here in controversy, object of the case here referred to <u>LSREF2 v. Miguel Rivera Rosario, et. als</u>,,  Civil No. FCC12010-0449. .

57 On July 14, 2020, approximately one year and nine months later, Hibiscus[1] filed in the foreclosure case referred in the preceding paragraph  a "Motion Soliciting Substitution of Party",  announcing for the first time  that the same  had acquired all of LSREF2's interest in the credit facility at issue in this case, which plaintiff did not know, and that Hibiscus, in its own words,  "<u>subrogated"</u> itself  in all LSREF2's rights in relation to  the defendants.  However, in doing so, <u>Hibiscus also subrogated itself in relation to the</u> <u>claims plaintiff Miguel Rivera  had against LSREF2.</u>


58. A third party that is subrogated to the creditor's rights  does not cause the extinction of the original compulsory relationship, but replaces one creditor with another. The  main effect of a subrogation  is that the new creditor is placed in the <u>same juridical situation"</u>  as the creditor with respect to the debtor. (The Supreme Court's emphasis) (<u>Cooperativa de Seguros Múltiples de Puerto Rico v. Jorge Carlo Marrer6</u>, 2011 TSPR 99)

<u>59. .In this respect it should be considered  that when  on October 23, 2018 Hibiscus acquired all of LSREF2's interest in the credit facility at issue in this case,  LSREF2's juridical situation already included against the same, and in favor of Mr.  Gómez and plaintiff Miguel Rivera,  the Puerto Rico Superior</u>

---

[1] Represented by the same law firm and attorney which represented LSREF2 in the foreclosure proceedings object of the present case and the referred appeals.

Court's Resolution of February 6, 2017 entered in the foreclosure case and referred in this complaint.

60.Hibiscus acquired all of LSREF2's interest in the credit facility at issue in this case,  LSREF2's juridical situation already included against the same, and in favor of Mr.  Gómez and plaintiff Miguel Rivera,  the Puerto Rico Superior Court's Resolution of February 6, 2017 entered in the foreclosure case and  referred in this complaint.

61 Said juridical situation also included the already  existing and ongoing proceedings in the Puerto Rico Supreme Court, where the validity of said Resolution was being considered, and where  finally Judgment was entered  against LSREF2, and in favor of Mr. Gómez and plaintiff Miguel Rivera, risk that Hibiscus assumed. In addition,  it should be also be considered that in the transfer of credit, debtor conserves against the new creditor the pleas and defenses the same had against the prior creditor. (Cooperativa de Seguros Múltiples de Puerto Rico v. Jorge Carlo Marrero, supra)

62.As a result,  Hibiscus is solidarily also responsible for LSREF2's malicious and without probable cause actions  here depicted and for the  damages  suffered by  plaintiff as a result of said actions, which are figured in the total sum of $5,500,000.00, and for any other  claim included in the present complaint.

63. Plaintiffs'  address is the following: Las  Flores Street  #358, San Juan,P.R.00912

WHEREFORE, plaintiff very respectfully requests from this Honorable Court the following:

a) That the same determine that both LSREF2 and Hibiscus are responsible, in a solidary manner, for the damages suffered by plaintiff in the present case as a result of LSREF2's malicious prosecution against the same;

b)That the Court grant this complaint and order defendants to pay plaintiff, with solidarity, for the damages suffered, the amount of Five Million Five Hundred Thousand Dollars ($5,500,000.00), plus costs, expenses and attorney's fees.

c)That the same impose punitive damages against defendants for an amount not less than One Million Dollars ($1,000,000.00)

d)Grant any other relief which this Honorable Court deems just and proper.

At Dorado, Puerto Rico this October 24, 2024.

S/RAUL BARRERA MORALES, ESQ.

RAUL BARRERA MORALES

ATTORNEY FOR PLAINTIFF

P.O. Box 40, Dorado, P.R. 00646

Tel. (787) 932-0469

barreralaw@yahoo.com

USDC 117-608